**Robert G. LAMB, Plaintiff-Appellant,**

v.

**Marvin JERNIGAN, Warden,
Defendant-Appellee.**

No. 81–7468.

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1982.

James C. Bonner, Jr., Prisoner Legal Counseling Project, Legal Aid and Defenders Society, University of Ga. School of Law, Athens, Ga., for plaintiff-appellant.

Susan V. Boleyn, Asst. and counsel of record, Atlanta, Ga., for defendant-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

KRAVITCH, Circuit Judge:

The sole issue presented by this appeal is whether jury instructions given at appellant's state court trial violated his right to due process.

## A. Facts

Appellant was tried for murder in Georgia Superior Court. Evidence introduced by the prosecution at trial established the following facts. At about midnight on a Saturday night in March 1978, security officers for a public housing project in Columbus, Georgia were contacted by a woman living in the apartment complex about a disturbance in the apartment directly above. When the officers arrived at her apartment they heard loud noises from above, including a blaring television and sounds of people arguing and moving around. The officers knocked on the door of the apartment from which the noise was emanating and called to the tenant Brady, who replied from inside that he needed help. Fifteen seconds later appellant opened the door, which had been locked. Inside, the officers found Brady covered with blood, having sustained multiple wounds from an ice pick found by the officers in another room. Appellant told the officers someone had beat Brady.

Appellant gave three conflicting stories— two to police prior to trial, and a third that he related both to the police and on the witness stand. In the first two statements, he denied having inflicted the wounds that killed Brady; in his third statement, however, which he reiterated at trial, he described an argument between himself and Brady after the two had been drinking. A physical struggle ensued during which appellant allegedly cried for help. He testified that Brady accused him of stealing some whiskey and of taking Brady's girlfriend and that eventually Brady attacked him with the ice pick, stabbing him twice. Appellant stated that he then grabbed the weapon, "begged [Brady] to quit," and started "slinging" the pick, which he was unable to get out of Brady's hand. He testified that the two continued to struggle and that he "managed to turn the ice pick around" and push it back toward Brady. Appellant testified that he had given the prior false statements to police because he had been scared.

The medical evidence introduced by the prosecution showed that Brady sustained eleven wounds. Although the state's medical expert testified that in his opinion a wound in Brady's heart caused his death, he identified two other wounds, both in Brady's lungs, each of which alone could have caused death and would have disabled the victim almost immediately upon perpetration. The officers who arrested appellant

* Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama, sitting by designation.

at the scene of the killing testified that the only injury they observed to appellant's body was a scratch on his right arm. The shirt appellant was wearing was stained with blood that tests indicated was the same type as the victim's; no evidence of appellant's blood type was admitted.

On the basis of this evidence a jury found appellant guilty of murder, rejecting appellant's claim of self-defense. After being sentenced to life imprisonment and pursuing an unsuccessful appeal in state court, appellant filed this petition for habeas corpus in the district court.[1] That court denied relief, and this appeal followed.

### B. Constitutional Standard

Appellant contends the trial court's instructions on intent and malice impermissibly shifted the burden of proof to the defense. In several recent cases the Supreme Court has addressed the constitutionality of instructions claimed by defendants to be burden-shifting. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281

(1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The former Fifth Circuit also has addressed this issue in recent cases, three of which concern the Georgia murder statute under which appellant was convicted. *See Mason v. Balkcom*, 669 F.2d 222 (5th Cir. 1982); *Tennon v. Ricketts*, 642 F.2d 161 (5th Cir. 1981); *Holloway v. McElroy*, 632 F.2d 605 (5th Cir. 1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).[2] Foregoing the opportunity to expatiate upon the above precedents,[3] we briefly outline the method they establish for analyzing cases of this kind. The *Mullaney* and *Patterson* cases indicate that a critical component of our task is to ascertain whether the facts the defendant claims he is required to prove negate an essential element of the state law offense. *Mullaney v. Wilbur*, 421 U.S. at 696–701, 95 S.Ct. at 1888–1890; *Patterson v. New York*, 432 U.S. at 205–07, 210, 215–16, 97 S.Ct. at 2324–25, 2329–30. *See Sandstrom v. Montana*, 442 U.S. at 520–21 & n.10, 99 S.Ct. at 2457 & n.10; *Holloway v. McElroy*, 632 F.2d at 624–35. If we conclude that the facts in issue are "elements necessary to constitute the crime," *id.* at 628, we must then determine the nature of the presumption or inference[4] described by the challenged instructions. *Sandstrom v.*

1. Although it does not appear from the record that appellant raised this claim in his direct appeal or collateral attacks in state court so as to exhaust his state remedies, the state apparently conceded in its answer to appellant's habeas petition that recourse to the state courts would be futile. Further, the state has not raised lack of exhaustion in this court. The former Fifth Circuit has held that a state's failure to raise lack of exhaustion in the district court ordinarily constitutes waiver of the exhaustion requirement. *Hopkins v. Jarvis*, 648 F.2d 981, 983 n.2 (5th Cir. 1981); *Messelt v. Alabama*, 595 F.2d 247, 250–251 (5th Cir. 1979). In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) this circuit adopted as precedent the decisions of the former Fifth Circuit. On the authority of the above Fifth Circuit cases, therefore, we hold that the state has waived the exhaustion requirement and we will address the merits of appellant's claim.

2. None of those cases is entirely dispositive of this case because neither the specific instructions appellant challenges nor the entire charge

given at his trial are identical to those involved in the above cases.

3. For a discussion of *Mullaney, Patterson*, and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), see *Holloway v. McElroy*, 632 F.2d 605, 620–28 (5th Cir. 1980). For a discussion of *Sandstrom*, see *Mason v. Balkcom*, 669 F.2d at 225–26.

4. The "presumption"/"inference" terminology employed by courts and legislatures is not free from confusion. Both refer to the process by which one fact or set of facts is drawn from another. "Inferences" usually refer to deductions made on the basis of logic, reason, or common sense, *see* Black's Law Dictionary 700 (5th ed. 1979), whereas "presumptions" may be based on policy as well. *See* Webster's Third New International Dictionary 1796 (1976) (compare definitions of presumption of fact and presumption of law). Apparently, the term "inference" has tended to be used more frequently for evidentiary devices that are permissive in nature and rebuttable, whereas "pre-

*Montana,* 442 U.S. at 514, 99 S.Ct. at 2454. *See Ulster County Court v. Allen,* 442 U.S. at 156–63, 99 S.Ct. at 2224–27. Ultimately, the constitutionality of the evidentiary device will turn on whether it "undermine[s] the factfinder's responsibility at trial, based on evidence adduced by the state, to find the ultimate facts beyond a reasonable doubt." *Id.* at 156, 99 S.Ct. at 2224. The first part of our inquiry—i.e. ascertaining the role of the facts at issue in the definition of the crime—requires a functional analysis of the state statute and cases. *Holloway v. McElroy,* 632 F.2d at 625, 628. The effect of the presumption on the allocation of proof, however, is not to be determined by reference to state courts' interpretation of the criminal statute but instead depends solely on "the way in which a reasonable juror could have interpreted the [challenged] instruction." *Sandstrom v. Montana,* 442 U.S. at 514–19, 99 S.Ct. at 2454–56.

### C. Application of Standard to This Case

1. *Did instructions concern essential element of offense?*

 The instructions challenged by appellant pertain to the existence of intent and of malice in the context of prosecution for murder under Georgia law. Ga.Code Ann. § 26–1101(a) (1978) defines the offense of murder as follows:

A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

In *Holloway,* the court construed this murder statute as establishing three elements for the offense of murder: (1) homicide;[5] (2) malice; and (3) unlawfulness. *Holloway v. McElroy,* 632 F.2d at 628. *Accord Mason v. Balkcom,* 669 F.2d at 224. It interpreted the "malice" element, which distinguishes murder from the lesser offense of voluntary manslaughter, to mean simply intent to kill in the absence of provocation.[6] *See Holloway v. McElroy,* 632 F.2d at 629. Although the *Holloway* court did not so state, Georgia cases indicate that circumstances comprising justification, including self-defense, also negate the existence of malice. *E.g., Felts v. State,* 244 Ga. 503, 260 S.E.2d 887, 888–89 (1979) *Patterson v. State,* 239 Ga. 409, 238 S.E.2d 2, 7 (1977).[7] The Fifth Circuit's in-

---

sumption" may refer to mandatory or conclusive ones. *See* Black's Law Dictionary 1067–68. Perhaps greatest clarity can be achieved by not distinguishing between "presumptions" and "inferences" but rather using these terms interchangeably with modifiers to indicate whether the device in question is permissive or mandatory and whether it is conclusive or rebuttable. *See, e.g., Ulster County Court v. Allen,* 442 U.S. at 156–57, 99 S.Ct. at 2224.

5. "Homicide" refers simply to "caus[ing] the death of another human being." *Holloway v. McElroy,* 632 F.2d at 628. *See* Black's Law Dictionary 661 (5th ed. 1979).

6. Provocation or "hot blood" is a mitigating factor that reduces an intentional killing from murder to voluntary manslaughter. *Holloway v. McElroy,* 632 F.2d at 629. Malice and provocation are inconsistent and distinguish the two offenses. *Id.*

7. See also Black's Law Dictionary 661 (5th ed. 1979), which includes among the definitions of malice:

A condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another *without justification or excuse.*

\* \* \* \* \* \*

In murder, that condition of mind which prompts one to take the life of another *without just cause* or provocation . . . . It includes not only anger, hatred and revenge, but also every other *unlawful and unjustifiable motive.*

(emphasis added). Although, as the *Holloway* court noted, a legal excuse or justification such as self-defense negates the "unlawfulness" element of murder, *Holloway v. McElroy,* 632 F.2d at 631–35, apparently it refutes the malice element as well.

terpretation of the statute as making malice one of the essential elements of murder coincides with the Georgia Supreme Court's construction of the act. *See, e.g., Tucker v. State,* 245 Ga. 68, 263 S.E.2d 109, 111, *cert. denied,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980); *Davis v. State,* 237 Ga. 279, 227 S.E.2d 249, 250 (1976). In *Mason v. Balkcom,* 669 F.2d at 224, the court held not only that malice is an essential element of murder in Georgia, but that intent to kill, because it is an essential part of malice, is also an essential element of murder. We conclude that malice, including both the intent component and the lack of provocation or justification, is an essential element of murder under Ga.Code Ann. § 26–1101(a) that *Mullaney* and its progeny require the state to prove beyond a reasonable doubt.

2. *Did instructions operate to shift burden of proof?*

We must now scrutinize the instructions on malice that were given at appellant's trial to determine how they allocated the burden of proof. Appellant contends that three of the instructions created a mandatory presumption, arising from the state's showing that a homicide was committed, that it was committed with malice.[8] Such presumption could be negated, appellant in-

8. The instructions given at appellant's trial are reprinted below, with omissions as indicated. The specific instructions appellant challenges are italicized.

[Introductory instructions describing role and content of indictment and defendant's plea]

Now, this defendant enters upon the trial of this case with the presumption of innocence in his favor and that presumption remains with him throughout the trial of this case, until and unless the State produces evidence in your presence and hearing, sufficient to convince your minds of the guilt of the accused of the crime charged in this Bill of Indictment.

The burden rests upon the State to prove to your satisfaction beyond a reasonable doubt every material allegation in this Indictment beyond a reasonable doubt before you would be authorized to convict the accused of this crime.

[instructions defining reasonable doubt and discussing credibility of witnesses omitted]

Now, criminal intent, being an essential element of every crime, is a question of fact to be determined by you, ladies and gentlemen of the jury, whether such intent existed in the mind of this defendant at the time of the alleged crime.

Intent may be shown in many ways, provided you find that it existed from the evidence produced before you during the trial of this case.

*It may be inferred, ladies and gentlemen, from proven circumstances or by the acts and conduct of the defendant or it may be presumed when it would be the natural and necessary consequence of the particular acts.*

Stated simply in laymans language, ladies and gentlemen, criminal intent means simply the intent to commit an act which the laws of the State of Georgia prohibit and forbid.

Now, direct evidence is that which immediately points to the question at issue. Indirect or circumstancial [sic] evidence is that which only tends to establish the issue by proof of various facts, sustaining by their consistency they [sic] hypothesis claimed. And I instruct you that in order to warrant a conviction upon circumstantial evidence, the proven facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis, save that of the guilt of the accused.

[instructions on expert testimony omitted]

Now, ladies and gentlemen, in this criminal Bill of Indictment this defendant is charged with the offense of murder. And I instruct you that the laws of the State of Georgia says that a person commits murder when he unlawfully, and with malice aforethought, either expressed or implied, causes the death of another human being.

Expressed malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

*Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.*

*Now, ladies and gentlemen, the law presumes that every homicide is malicious until the contrary appears from circumstances of alleviation, excuse or justification, and it is incumbant [sic] upon the accused to make out such circumstances to your satisfaction unless they appear from the evidence produced against him.*

I charge you ladies and gentlemen that legal malice is not necessarily ill will or hatred. It is the unlawful intent to kill and person [sic]—to kill a human being without justification or mitigation, which intention, however, must exist at the time of the killing as alleged.

Under the law, it is a fixed and deliberate person [sic] in the mind of the slayer to

sists, only where the defense proves the existence of factors, such as provocation or self-defense, that are inconsistent with malice. Appellant argues, therefore, that this case is controlled by *Mullaney v. Wilbur*, 421 U.S. at 684, 95 S.Ct. at 1882 (1975) (invalidating instruction that required defendant to prove provocation to reduce homicide from murder to manslaughter). *See also Sandstrom v. Montana*, 442 U.S. 510, 517, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979) (invalidating presumption that could have been understood as conclusive or as shifting burden of persuasion on intent). The state maintains that, viewed as a whole, the instructions could not have been considered by a reasonable juror as shifting the burden of persuasion to the defendant on the malice question.

 The Georgia Supreme Court explained the state's law governing allocation of proof on the malice issue in *Davis v. State*, 237 Ga. 279, 227 S.E.2d 249 (1976):

> Malice is a state of mind and frequently must be proven indirectly. It is an element of the crime of murder with malice aforethought and therefore must be proven by the State beyond a reasonable doubt. Where the State proves all the circumstances of the killing and those circumstances show an abandoned and malignant heart, malice shall be implied unless there is evidence showing considerable provocation.
>
> The burden of producing some evidence of provocation is on the defendant only after the State shows circumstances from which malice may be implied, and the ultimate burden of proving malice beyond a reasonable doubt is on the State.

*Id.* at 280, 227 S.E.2d at 250. If the instructions concerning malice operated in accordance with the above statement of Georgia law then they did not violate the due process clause.[9] While the Georgia Supreme Court is the "final authority on the weight to be given a presumption under [Georgia] law," however, "it is not the final authority on the interpretation which a jury could have given the instruction[s]" here challenged. *Sandstrom v. Montana*, 442 U.S. at 516–17, 99 S.Ct. at 2455. It is our duty independently to scrutinize "the words actually spoken to [appellant's] jury" to determine "the way in which a reasonable juror could have interpreted [them]." *Id.* at 514, 99 S.Ct. at 2454.

### a. *Intent instruction*

 Appellant challenges the state court's intent instruction, which provides

> unlawfully take away the life of a human being under circumstances that the law would neither mitigate, justify nor excuse.
> Under the law, it is not necessary that it would exist for a considerable time.
> Under the law, if it should exist for just one moment and if death should insue [sic] in consequence of such fixed and deliberate purpose, the killing would be murder.
> In legal contemplation, a man may form the intention of doing some act at a particular instance, commit the act, and regret it as soon as it is done.
> Now, ladies and gentlemen, this defendant states that the acts that he committed were justifiable, that he committed them in defense of his person.
> The law of the State of Georgia says thus, that a person is justified in using force against another when and to the extent that he reasonably believes that such force is necessary to defend himself against such others [sic] imminent use of unlawful force. However, a person is justified in using force

> which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself.
> Now, ladies and gentlemen, if you believe this defendant to be justified in the homicide of this defendant, it would be your duty to acquit him.

**9.** The Supreme Court has recognized that inferences that operate to shift only a low burden of production—and not the burden of persuasion—to the defendant are constitutionally acceptable if there is a rational connection between the inference and the underlying facts. *See Ulster County Court v. Allen*, 442 U.S. at 157 n.16, 99 S.Ct. at 2225 n.16; *Mullaney v. Wilbur*, 421 U.S. at 701–02 & nn.28, 30–31, 95 S.Ct. at 1891 & nn.28, 30, 31. *See also Holloway v. McElroy*, 632 F.2d at 635 (quoting *Hankerson v. North Carolina*, 432 U.S. 233, 237 n.3, 97 S.Ct. 2339, 2342 n.3, 53 L.Ed.2d 306 (1979)).

that intent "may be inferred . . . from proven circumstances or by the acts and conduct of the defendant or [ ] may be presumed when it would be the natural and necessary consequence of the particular acts.[10] Appellant argues that *Sandstrom v. Montana, supra,* which invalidated a charge stating "[t]he law presumes that a person intends the ordinary consequences of his acts," *Sandstrom v. Montana,* 442 U.S. at 513, 99 S.Ct. at 2453, is controlling. Even were the charge in this case identical to that given in *Sandstrom,* the latter case would not necessarily compel reversal here, however. It is well established that "[i]n determining the effect of [an] instruction on the validity of [a] conviction, . . . a single instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). "[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. *Accord Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The approach mandated by the above cases requires courts to consider the effect even of patently erroneous instruc-

tions in light of the remainder of the charge and the entire trial. The instructions preceding the one at issue informed the jury of the presumption of innocence, and the state's burden of proof beyond a reasonable doubt.[11] Moreover the jury was specifically instructed that intent is an essential element to be determined by it *from the evidence* produced at trial. See note 8 *supra.* Although these prior instructions were not entirely inconsistent with a conclusive or burden-shifting presumption, *cf. Sandstrom v. Montana,* 442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7, they reduced the likelihood that the jury might misinterpret the following instruction as such. In any event, the instruction in this case was not identical to that invalidated in *Sandstrom,* and we conclude that the differences were constitutionally significant.[11a]

Initially, we note that the first part of the instruction, which was not present in *Sandstrom,* is perfectly sound, constitutionally and otherwise. The import of the statement that intent "may be inferred . . . from proven circumstances or by the acts and conduct of the defendant" is simply that the jury may rely on circumstantial evidence in finding intent. In no way does the instruction suggest that the burden is on the defendant rather than the prosecution or that the circumstantial evidence

---

10. See first italicized instruction in note 8 *supra.* In *Holloway, supra,* the court declined to rule on an instruction pertaining to the presumption of intent, holding instead that any error in such instruction was necessarily harmless in view of the defendant's having acknowledged that the killing was intentional. *Holloway v. McElroy,* 632 F.2d at 618. In this case, although appellant admitted the killing, it is unclear whether he raised a defense based on lack of intent. The evidence indicated he had been drinking on the night of the killing, and he testified at trial that he was "tore up" and "in a state of confusion" at the time of the incident. Since the record does not contain the arguments of counsel, we cannot be sure the defense theories did not include lack of intent. *Cf. Mason v. Balkom,* 669 F.2d at 228 (Hill, J., specially concurring). Nor has appellant acknowledged intent to kill in this habeas action. Hence we must address the validity of the intent instruction.

11. See note 8 *supra. Compare id. with Tennon v. Ricketts,* 642 F.2d at 162–63 (instructions provided presumption of innocence removed when state shows intentional killing); *Holloway v. McElroy,* 632 F.2d at 619 (same).

11a. We realize that language in the recent opinion of *Hearn v. James,* 677 F.2d 841 (11th Cir. 1982) suggests that an almost identical instruction may be invalid under *Sandstrom. Id.* at 843. The *Hearn* panel did not decide this issue, however, because the defendant in *Hearn* had been convicted of an offense to which the challenged instruction did not apply rendering any possible error in the instruction harmless. *See id.* Hence, the *Hearn* panel's intimation that such instruction might be unconstitutional is dictum, which is not binding on the court.

need not convince the jury of the defendant's intent beyond a reasonable doubt. Indeed, the instruction given two paragraphs later emphasized the applicability of the reasonable doubt standard in the special context of circumstantial evidence by requiring that facts proven by such evidence "not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." As to the second part of the instruction, stating that intent "may be presumed when it would be the natural and necessary consequence of the particular acts," such charge was also permissive. Unlike the ambiguous directive—"the law presumes that . . ."—contained in the *Sandstrom* and *Mason* instructions, the "*may be* presumed" language used here was unlikely to be interpreted by reasonable jurors as *requiring* them to draw an inference of intent. *Compare Sandstrom v. Montana*, 442 U.S. at 514–15, 99 S.Ct. at 2454; *Mason v. Balkcom*, 669 F.2d at 225.[12] The permissive language would also tend to prevent reasonable jurors from viewing the presumption, once made, as conclusive or irrebuttable. Having been told that they *might* infer intent from certain types of evidence, reasonable jurors would not likely conclude they were entitled to do so in the face of convincing contradictory evidence. Finally, even if the instruction could have been understood as allowing the jury to make an irrebuttable inference of intent, the term "necessary" limited the acts from which the jury could draw such inference to those that in its view could not have been performed unintentionally. We conclude that this instruction was not reasonably susceptible of an interpretation that relieved the prosecution of its burden of proving intent beyond a reasonable doubt or otherwise undermined the factfinding responsibility of the jury.

**b.** *Malice instructions*

 The second instruction with which appellant takes issue provides that "[m]alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." The "shall be implied" language in this charge is suggestive of a mandatory presumption, which might be interpreted either as conclusive or rebuttable. Further analysis reveals, however, that the evidentiary device created by the instruction does not fit that mold. The basic or underlying facts from which the so-called presumption of malice is drawn are not specifically delineated but rather are referred to in the general terms "circumstances . . . show[ing] an abandoned and malignant heart." Hence, before drawing an inference of malice, the trier of fact must first conclude that the facts surrounding the killing indicate that the defendant acted with a "malignant heart." Again such instruction is really a directive to the jury that the finding of malice must often be based entirely on circumstantial evidence—that it is not entitled to refuse to find malice solely because direct evidence of malicious intent is lacking. This instruction does not expressly relieve the prosecution of proving circumstances that indicate malice nor reduce such burden to something less than beyond a reasonable doubt. Considered in isolation the instruction failed to meet the goal of precision and clarity espoused in the *Mullaney* and *Sandstrom* cases. In view of the strong circumstantial evidence instruction preceding this instruction, see note 8 *supra*, however, we cannot conclude that reasonable jurors would have interpreted the latter as changing the reasonable-doubt burden of proof they were initially told the prosecution had to meet.

 The next instruction to which appellant objects presents a more difficult

---

**12.** Although ideally an instruction such as this should explicitly inform the jury that it is only permitted—and not obligated—to draw the inference described, *e.g.*, *United States v. Ross*, 626 F.2d 77, 79–80 (9th Cir. 1980); *United*

*States v. McRae*, 593 F.2d 700, 705 (5th Cir. 1978), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979), perfection is not the constitutional standard.

question. That portion of the charge states not only that "the law presumes that every homicide is malicious until the contrary appears from circumstances of alleviation, excuse or justification," but also that "it is incumbant [sic] upon the accused to make out such circumstances to your satisfaction unless they appear from the evidence produced against him." See note 8 *supra*. In *Sandstrom*, the Supreme Court found the language "the law presumes . . ." susceptible of interpretation as creating a mandatory presumption. *Sandstrom v. Montana*, 442 U.S. at 515, 99 S.Ct. at 2454. Language similar to the first clause above has also been disapproved by the former Fifth Circuit for use by federal trial courts because it may reasonably be interpreted as shifting the burden to the accused to prove his innocence. *United States v. Chiantese*, 560 F.2d 1244, 1255 (5th Cir. 1977) (en banc), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979). As to the second clause, it would be difficult to interpret it otherwise than as requiring the defendant to shoulder the burden of proof on "alleviation, excuse or justification." Moreover, the nature of the defendant's burden described by the terms "mak[ing] out such circumstances to your [the jury's] satisfaction" could easily be viewed as one of persuasion and not mere production of some evidence. In short, we cannot escape the conclusion that the above instruction, by itself, could have been read as shifting the burden of proof to the defendant on an essential element of the crime of murder. We must therefore consider whether the potential for such interpretation created by the above instruction was neutralized by the other instructions given at the trial. *See Sandstrom v. Montana*, 442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7. *See also Holloway v. McElroy*, 632 F.2d at 620. We conclude that it was not. The general instructions that the defendant was presumed innocent until proven guilty and that the state had the burden of proving beyond a reasonable doubt all elements of the offense was not sufficient to rectify the possible burden-shifting instruction on the malice element since, as the Court noted in *Sandstrom*, *supra*, the latter instructions were not theoretically inconsistent with the former. *Sandstrom v. Montana*, 442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to [malice] could be satisfied." *Id*. Nor did the instructions pertaining to express malice negate the potential for interpreting the above instruction as burden-shifting, because the latter concerned implied malice, which concept the instructions indicated is distinct from express malice. See note 8 *supra*. *See Mullaney v. Wilbur*, 421 U.S. at 686 n.4, 95 S.Ct. at 1883 n.4. Although we agree with appellee that the instruction was not as egregious as that invalidated in the *Holloway* and *Tennon* cases,[13] we cannot rule out the substantial possibility that the jury interpreted the charge as relieving the state of its constitutional burden of proving malice beyond a reasonable doubt. "Accordingly, [appellant's] conviction and sentence must be set aside unless the erroneous charge was harmless beyond a reasonable doubt." *Mason v. Balkcom*, 669 F.2d at 226.[14]

**13.** The charges in those cases, in addition to language very similar to the malice instruction at issue, included a paragraph stating that once the prosecution proves the defendant intentionally killed the victim *"the presumption of innocence with which he enters upon the trial is removed from him and the burden is upon him to justify or mitigate the homicide...."* *Tennon v. Ricketts*, 642 F.2d at 162; *Holloway v. McElroy*, 632 F.2d at 619. Such instruction combined with one like that at issue even more obviously than the latter instruction by itself shifted the burden to the defendant to prove factors inconsistent with malice.

**14.** Appellant relies on *Ulster* in urging this court to hold that a burden-shifting instruction may never be treated as harmless error. *Ulster's* statement that it is "irrelevant in analyzing a mandatory presumption . . . that there is ample other evidence in the record to support a conviction," *Ulster County Court v. Allen*, 442 U.S. at 159–60, 99 S.Ct. at 2226, concerns the method of analyzing the interpretation a jury

### 3. *Was error harmless?*

The *Mason* case recognizes that the harmless error rule may apply to an unconstitutional, burden-shifting instruction. Where the instruction shifts the burden on an element that is not at issue in the trial, for example, the error will be held harmless. *Id.* at 227. *See, e.g., Holloway v. McElroy*, 632 F.2d at 617–18 (instruction re malice held harmless where defendant convicted of offense for which malice was not an element; instruction re intent harmless because defendant never contested intent). The erroneous instruction in this case concerned malice. Appellant was convicted of murder, of which malice is one of the essential elements under Georgia law. See text *supra* at 1336–1338. Moreover although he admitted the killing, appellant contended at trial that he acted in response to an attack on himself by the victim. Appellant's testimony indicates his primary defense was that he acted in self-defense and, allegedly, with provocation.[15] Because self-defense and provocation negate malice and the jury was required to find malice before it could convict appellant[16], the existence of malice obviously was a critical issue at ap-

pellant's trial. Even though the erroneous instruction pertains to an element that was at issue in the trial, however, it may still have been harmless if the evidence of guilt was so overwhelming that the error cannot have contributed to the jury's decision to convict. *Mason v. Balkcom*, 669 F.2d at 226, 227. We hold that in this case the evidence of guilt was overwhelming. Appellant was found alone in an apartment with the deceased on the night of the killing. He gave three conflicting accounts of the incident to the police, eventually admitting that he committed the killing. Although he testified that the victim initially attacked and wounded him with the ice pick, the officers who examined appellant on the scene testified that they had observed no wounds like those he described. Moreover, in stark contrast to appellant's testimony that his intent was merely to prevent the victim from harming him, the state's evidence showed that appellant stabbed the seventy-two year old victim eleven times and that at least three of the wounds appellant inflicted would immediately have disabled him. Without dwelling further on the grisly details surrounding

---

might give to the challenged instruction; it does not concern the analysis of the actual effect of an instruction that has already been determined to be erroneous. Nor do the cases cited by *Ulster* preclude application of the harmless error rule in this context. They hold simply that where the jury is allowed or required to draw an invalid presumption, the presence in the record of evidence *sufficient* to support the presumed facts is not dispositive. *See Leary v. United States*, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57 (1969). This does not mean that a burden-shifting instruction may not be considered harmless where evidence in the record *overwhelmingly* establishes guilt. Where the evidence is merely sufficient, the jury conceivably could have acquitted the defendant had the erroneous instruction not been given. Where the evidence is overwhelming, however, such that the court concludes that no reasonable juror could have voted in favor of acquittal, the jurors' possible erroneous reliance on an unconstitutional presumption cannot prejudice the defendant. Finally, we note that the former Fifth Circuit has already resolved the question of the applicability of the harmless error rule to burden-shifting instructions. *See Mason v. Balkcom*, 669 F.2d

222, 227 (5th Cir. 1982); *United States v. Sutton*, 636 F.2d 96, 98 (5th Cir. 1981). *See also Nelson v. Solem*, 640 F.2d 133, 136 (8th Cir. 1981); *United States v. Harrigan*, 586 F.2d 860, 863 (1st Cir. 1978).

15. The evidence the defense introduced was extremely weak on both provocation and self-defense, and it is difficult to determine from that alone what the defense's main theories were. Moreover, because the record does not contain counsels' summation, we can only surmise what arguments the defense attorney likely made. Appellant's brief suggests that his defense was provocation. The trial court's charge, however, contains an instruction on self-defense but no specific instruction on provocation. See note 8 *supra*. The facts do not indicate that appellant requested a charge on provocation; hence it appears he relied primarily on self-defense in attempting to negate malice.

16. Appellant was charged with murder only, and the court did not instruct the jury on the lesser offense of voluntary manslaughter.

this brutal killing, we conclude that no reasonable juror could have determined, from the evidence presented at appellant's trial, that appellant acted out of provocation or self-defense. Hence, the erroneous instruction was harmless beyond a reasonable doubt; accordingly, we AFFIRM.