**Lilton BAKER, Petitioner-Appellee,**

v.

**Charles MONTGOMERY,
Respondent-Appellant.**

**No. 85–8799.**

United States Court of Appeals,
Eleventh Circuit.

March 2, 1987.

Susan Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

Floyd Buford, Jr., Macon, Ga., for petitioner-appellee.

Before HILL and FAY, Circuit Judges, and MORGAN, Senior Circuit Judge.

HILL, Circuit Judge:

Defendant Lilton Baker is currently serving a life sentence for murder, a fifteen year sentence for aggravated battery, a fifteen year sentence for two counts of incest and a twelve month sentence for simple battery. Defendant brought this present petition for a writ of habeas corpus challenging his incarceration by the state of Georgia. The United States District Court for the Middle District of Georgia granted the petition with respect to the defendant's murder conviction, finding that

a violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), had occurred. The petition was denied in all other respects.[1]

■ We agree with the district court that the instruction given constituted a *Sandstrom* error. Under the circumstances of this case, however, such a violation was harmless beyond a reasonable doubt. We therefore reverse the portion of the district court's order granting the petition.

At the defendant's trial, the jury was charged:

> I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his conduct and where a person uses a deadly weapon in the manner in which such weapons are ordinarily employed to produce death, thereby causing the death of a human being, the law presumes an intention to kill.

Trial Transcript at 403–04. Later in the charge, the jury was instructed:

> Intent may be shown in many ways provided the jury finds that it existed from the evidence produced before them. It may be inferred from the proven circumstances or by acts and conduct or it may be presumed when it is the natural and necessary consequences of the act.

Trial Transcript at 410. During jury deliberations, the foreman requested additional instructions as to premeditation. The jury was called back and again instructed:

> I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his conduct and where a person uses a deadly weapon in the manner in which such weapons are ordinarily employed to produce death, thereby causing the death of a human being, the law presumes an intention to kill.

Trial Transcript at 505. In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61

L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court found similar instructions to be unconstitutional. We agree with the district court that the instruction given constitutes a mandatory presumption and thus relieves the state of its duty to prove every element of the offense. The state vigorously contends that other portions of the charge establish that the state is required to prove every element of the offense. Viewing the whole charge, we conclude that a reasonable jury would have likely concluded that the above quoted charge created a mandatory presumption. This constitutional error was not unambiguously corrected by other language appearing in the entire charge.

■ When faced with a *Sandstrom* violation, the court must proceed to consider whether an error was harmless. *Rose v. Clark,* — U.S. —, 106 S.Ct. 3101 92 L.Ed.2d 460 (1986). An error will be deemed harmless when the court finds that, beyond a reasonable doubt, the jury would have returned the same verdict had it not been for the error. Therefore, a *Sandstrom* error will not automatically be deemed harmful simply because a defendant raises a defense which contests the intent of the perpetrator. When such a defense is frivolous or wholly implausible, a *Sandstrom* error should be deemed harmless. In the case at bar, defendant raised the defenses of provocation and self-defense at trial. In light of the facts of this case, we conclude these defenses were frivolous and wholly implausible. We therefore find the *Sandstrom* error to be harmless.

■ On November 26, 1978, Bobby Lee Simmons went to the defendant's home to purchase an automobile engine. As Simmons was looking under the hood of one of defendant's cars, the defendant grabbed an

---

1. No cross appeal was filed by the defendant challenging the portion of the district court order denying the petition with respect to the convictions for aggravated battery, incest, and simple battery. Additionally, the district court order rejected a myriad of other constitutional violations alleged to have occurred at the defendant's trial. Having failed to brief and argue these issues on appeal, defendant has abandoned these claims. *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, (5th Cir. Unit B 1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983).

ax handle and struck Simmons from behind. A struggle ensued in which the defendant continued to club Simmons with the ax handle. At one point, Simmons attempted to flee, but the defendant refused to allow Simmons to escape alive. Trial Transcript at 240, 272. As Simmons, badly beaten, lay on the ground, the defendant ordered him to spread his legs. When Simmons refused, the defendant struck Simmons in the genitals with the ax handle. Trial Transcript at 241.

As Simmons lay dying, defendant responded to the pleas for help coming from the victim's wife. The defendant said he would help by "get[ting] his God damned tractor and pull[ing Simmons] in the woods." Trial Transcript at 105, 242. Following up on this threat, the defendant ordered his daughters to get a rope so that he could pull Simmons off his property. Trial Transcript at 225. The defendant then told the victim's wife that he would finish killing Simmons if his body were not removed within seven minutes. Trial Transcript at 106, 274, 284.

As police officers arrived at the scene, the Simmons family was attempting to drag the victim's body away from the defendant's property. Simmons was then taken to a hospital where he died as a result of his injuries. The autopsy revealed that two disabling blows would have been sufficient to cause death. The autopsy detailed the extent of force rendered against Simmons:

> There were multiple areas of blunt force injury. One was five centimeters or two and a half inches of the right temporal area ... which extended down, did not fracture the skull. There was marked hemorrhage within the right temporal muscle. There was another stalate or blunt force injury wound to the right occiput [back portion of skull], which also extended down to the glia which is the covering of the skull. There were two lacerations of the forehead and these were two to three inches. There was abrasions of the right forehead.

There was a fracture of the ramus of the right mandible [jaw bone]. It was broken. There was another fracture of the mandible on the left.... There was another blunt force wound of the left ear. There was what appeared to me to be a defense wound with an in-place fracture of the left ulna [forearm], just above the wrist. There were areas of the ecchymosis which is—or hematomas of the medial aspect of the left thigh. There was blood coming from the meatus of the penis. There were other smaller lacerations of the jaw.

Trial Transcript at 116–17. The cause of death was found to be a result of the victim's lungs filling with blood and other bodily fluids. The injuries to the head were also sufficient to cause death. In contrast to Simmons, the defendant did not need immediate medical assistance.

Before the police arrived, the defendant informed his family what they were to say to police. His thirteen year old daughter was directed to tell police that Simmons was fondling her buttocks and that her father observed this. Trial Transcript at 226, 278. Upon being questioned by police, the defendant claimed he hit Simmons with a stick and a fight resulted. The "stick" later turned out to be an ax handle.

At trial, the only evidence presented by the defendant was his own testimony. The defendant testified that he saw Simmons feeling his daughter, and that initially he hit the victim with his hand. He further claimed that after a struggle, Simmons pulled a knife and cut him. The defendant testified that his daughters hit the victim with a drink bottle and concrete block. No other witnesses or tangible evidence supported the defendant's version of what occurred. No knife was ever found. Furthermore, no knife wounds were observed by officers.[2] As a result of Baker's testimony, the defense was based upon provocation and self-defense.

The evidence presented by the state overwhelmingly negates an argument of self-defense or provocation. The magnitude of

---

2. On cross-examination, the officer who stated that no knife wounds were observed, admitted that she did not inspect the defendant for injuries. The fact remains, however, that the de-

the force used against Simmons unambiguously indicates the intentional nature of the killing. Even after Simmons was disabled, the blows continued. The savage nature in which Simmons was beaten is compounded by the fact that Simmons attempted to escape by running away. Rather than allow the confrontation to end, the defendant chose to beat Simmons until he was lifeless.

Although the defendant alleges self-defense/provocation, his self-serving testimony was contradictory to all other evidence and testimony before the jury. Of particular relevance is the fact that he attempted to have his daughters lie to the police in an attempt to establish a defense of provocation. Baker's conviction was a result of the overwhelming evidence presented by the state, rather than the improper charge to the jury.

Such a holding is consistent with existing Eleventh Circuit precedent. In *Lamb v. Jernigan*, 683 F.2d 1332 (11th Cir.), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983) (cited with approval in *Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101 92 L.Ed.2d 460 (1986)), this court found a *Sandstrom* violation to be harmless on closely analogous facts. In *Lamb v. Jernigan*, the defendant (Lamb) claimed that he and the victim had been arguing. According to Lamb, a struggle resulted and the victim proceeded to attack Lamb with a knife, stabbing him twice. Lamb contended he acted in self-defense, stabbing the victim eleven times. Three of these wounds would have been sufficient to cause death. The court concluded that a *Sandstrom* violation regarding malice was harmless in spite of the fact that defendant argued self-defense and provocation. The

court concluded the evidence of guilt was overwhelming. The court relied upon the following facts: (1) the victim was 72 years old and suffered three wounds which could have resulted in death; (2) defendant gave conflicting versions of what happened; and (3) police saw no wounds on the defendant consistent with those of defendant's story. As in *Lamb*, several facts support an argument that the evidence against Lilton Baker was so overwhelming that the jury would not have been affected by the *Sandstrom* error. As in *Lamb*, Baker claimed self-defense in spite of the multiple wounds inflicted on the victim each of which would have been sufficient to disable the victim. Here, Baker inflicted two disabling wounds capable of causing death. The most damaging evidence which defeats the self-defense claim is Baker's act of informing the victim's wife that he would kill the victim if the victim's maimed body were not removed from Baker's property within seven minutes. As in *Lamb*, Baker made several contradictory statements to the police. Additionally, Baker informed his daughters what story they were to tell police. As in *Lamb*, Baker claimed he was stabbed by the victim; an officer who saw Baker the night of the homicide did not notice any wounds on Baker.

 This circuit has held that merely claiming self-defense does not establish that the defendant possessed an intent to kill.[3] Even when a defendant contests his intent to kill, the court must consider whether evidence of guilt was overwhelming under the circumstances of the case as to render the *Sandstrom* error harmless. *See e.g., Patterson v. Austin*, 728 F.2d 1389 (11th Cir.1984) (evidence of guilt not overwhelming because defendant's testimony alleging self-defense was supported by

fendant did not require immediate medical attention.

**3.** In *Mason v. Balkcom*, 669 F.2d 222, 227 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983), the former Fifth Circuit held:

> Apparently the district court believed that by raising self-defense the defendant admitted having the intent to kill. This analysis is too broad. When claiming self-defense, one does not necessarily admit intent to kill, but rather

admits that the killing occurred. As the petitioner points out in his brief, one can shoot to kill in self-defense, shoot to frighten in self-defense or even shoot reactively in self-defense with no specific purpose. The mere raising of self-defense clearly does not establish that the defendant had the intent to kill....

This was an implicit overruling of the court's previous pronouncement in *Holloway v. McElroy*, 632 F.2d 605, 618 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981):

other witnesses). Thus, a *Sandstrom* error may be harmless even when a defendant contests intent by asserting self-defense. *See Rose v. Clark,* — U.S. —, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986) ("Thus, the fact that respondent denied that he had 'an intent to do any injury to another,' does not dispose of the harmless error question."). In light of the overwhelming evidence of guilt in the case at bar, "no rational jury would need to rely on an erroneous presumption instruction." *Id.* at 3108 n. 10.

Accordingly, the decision of the district court is

REVERSED.

General intent is an essential element of all crimes under Georgia law (except those involving criminal negligence), but Holloway has never contended that his shooting of [the victim] was unintentional—*i.e.,* that he did not intend the natural and probable consequence of his act. *Compare Sandstrom v. Montana,* 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979). Holloway acknowledged that he had committed the homicide, and that he had done so intentionally. By pleading only self-defense, he voluntarily focused the entire determination of his criminal culpability on a single question—was the homicide justified? There is no denial of due process in allowing a defendant to admit some essential elements of the crime in order to put justification into issue. We are convinced that any error in the jury instructions on the intent issue was harmless beyond a reasonable doubt.