Charles Thomas CORN, Petitioner-Appellee, Cross-Appellant,

v.

Walter ZANT, Warden, Jackson Diagnostic and Classification Center, Respondent-Appellant, Cross-Appellee.

No. 81–7649.

United States Court of Appeals, Eleventh Circuit.

June 15, 1983.

Rehearing and Rehearing En Banc Denied Aug. 11, 1983.

550

W. Davis Hewitt, Atty. Gen., Atlanta, Ga., for respondent-appellant, cross-appellee.

Harold A. Miller, III, Decatur, Ga., for petitioner-appellee, cross-appellant.

Before HILL and HENDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

HENDERSON, Circuit Judge:

The petitioner-appellee, Charles Thomas Corn, filed a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254 (1976) seeking to overturn his conviction and death sentence for murder and his conviction for armed robbery in the Superior Court of Clayton County, Georgia. He alleged twenty-one grounds for relief in the district court, although some of these issues were not raised in the state trial or habeas corpus court. However, by supplemental brief to this court, the state has expressly waived the exhaustion requirement. *See Lamb v. Jernigan,* 683 F.2d 1332, 1335 n. 1 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). Of the perceived twenty-one errors asserted in the federal district court, all but one were rejected by that court. The district court did find merit in Corn's challenge to the sentencing procedure in the state trial court, and granted his application for a writ of habeas corpus. The respondent in the state and federal habeas proceedings, Walter Zant, appeals the grant of the writ and Corn cross-appeals the denial of his other grounds of relief.

Charles Thomas Corn was convicted of murdering a "Stop and Go" convenience store employee and stealing $47.00 from the cash register in Clayton County, Georgia in 1975. The shop attendant, Mary Long, was dragged into the storage area where she was stabbed to death with a steak knife. After he killed Long, and with her blood on his hands and shirt, Corn waited on customers, telling them he had been the victim of an attempted robbery. These customers subsequently identified Corn. When Corn was arrested a few days later, his wife came to the police station and asked if he had killed the woman at the Stop and Go store. He answered, "Yes, I killed the girl, but I didn't mean to."

Upon his conviction, a superior court jury sentenced him to death on May 26, 1976.

tion.

On a mandatory review of the death sentence in accordance with Ga.Code Ann. § 27–2537 (recodified as Off.Code Ga.Ann. § 17–10–35 (1982)), the Supreme Court of Georgia upheld Corn's sentence of death for murder but suspended its imposition for the armed robbery conviction. *Corn v. State*, 240 Ga. 130, 240 S.E.2d 694 (1977), *cert. denied*, 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 415 (1978). Corn then filed a petition for a writ of habeas corpus in the Superior Court of Tattnall County, Georgia. The state habeas court denied relief, which denial was subsequently affirmed by the Georgia Supreme Court. *Corn v. Hopper*, 244 Ga. 28, 257 S.E.2d 533 (1979). Corn then instituted this federal habeas corpus action in the United States District Court for the Northern District of Georgia. The application was referred to a magistrate under 28 U.S.C. § 636(b)(1)(B) (West Supp. 1983). The magistrate in turn reviewed the transcript of the state trial proceedings and conducted an evidentiary hearing on Corn's ineffective assistance of counsel claim. In an exhaustive report and recommendation to the district court, the magistrate recommended the denial of all the petitioner's claims except one—that the trial court's instructions on malice and intent impermissibly shifted the burden of proof to the defendant in violation of the due process clause of the fourteenth amendment to the United States Constitution. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Upon review, the district court adopted the bulk of the report and recommendation but disagreed with two of the magistrate's findings. The district judge first rejected the conclusion that the instructions on intent unconstitutionally shifted the burden of proof. However, as indicated, the district court granted the writ based on his belief that the state trial judge impermissibly disclosed to the jury that Corn had an automatic appeal of the death sentence to the Supreme Court of Georgia.

■ Before turning to Corn's specific allegations of error, we again emphasize that a federal court does not sit as a state appellate court to correct violations of state evidentiary rules. *Bryson v. Alabama*, 634 F.2d 862 (5th Cir.1981); *Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir.1980); *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977).[1] Nor is it our role to analyze every infirmity that might have been reached on direct appeal. Our inquiry is restricted to those aspects of the trial affecting the petitioner's federal constitutional rights, *see, Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Passman v. Blackburn*, 652 F.2d 559, 567 (5th Cir.1981) *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982); *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.1970), *cert. denied*, 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970).

■ We address first the alleged error which led the district court to grant the writ. Corn maintains that the state trial judge improperly informed the jury of Georgia's automatic appeal rule. Ga.Code Ann. § 27–2537 (recodified as Off.Code Ga. Ann. § 17–10–35 (1982)). He says, and the district court agreed, that such a remark had the effect of diminishing the jurors' sense of responsibility in making their life or death decision at this crucial stage of the trial.[2] This problem arose during a break in the jury's deliberations when some of the jurors questioned the trial judge about his

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

2. Corn did not object during the trial to the judge's comments. Generally, failure to object precludes subsequent consideration of an issue unless the defendant can satisfy the cause and prejudice test set forth in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, as we stated in *Rogers v. McMullen*, 673 F.2d 1185, 1188 (11th Cir.1982), where a state court does not rely on a procedural default in its decision, but reaches the merits of the issue, this court may review the substantive question on appeal. *See also Thompson v. Estelle*, 642 F.2d 996 (5th Cir. 1981). The Georgia courts reached this constitutional ground, and thus, we are not foreclosed from reviewing it.

authority to change the sentence imposed by that body. The relevant portion of the colloquy between the court and the jurors is as follows:

Juror Deaton: Yes, your Honor, if the death penalty is invoked, does that automatically mean that the defendant will be placed in the electric chair?

Court: I don't know how to answer that, except I will say this. In the event there is a death penalty, the law provides for mandatory appeal and the case must be appealed by law. And if upon affirmance by the higher court, then the matter is as it is provided by law. [sic] I hesitate to say much more to you because for fear that I may make some judicial error in the case and I can only tell you that I have already told you about as much as I can under the law. Now is there anything else bearing on your mind?

Juror Randall: One thing that has been going through our minds is if we invoke the death penalty and that specifies the electric chair, can you as the overriding judge right now say, come in and say that he is going to get the electric chair or that he can have death by prison, or life imprisonment? That he is to die in prison and never to get out?

Court: Now the—

Juror Randall: Could you yourself do that?

Court: The Court by law in this particular case fix [sic] and imposes sentence that you provide in your sentence. I cannot change your sentence.

Juror Randall: *That's what we wanted to know, if you could do that.*

Court: The only sentence that I would pass is as I told you if you find no aggravating circumstances in connection with Count 1 pertaining to armed robbery, then I would set that sentence.

Juror: Not to repeat yourself, but if we did say life imprisonment, we have no idea about parole at all, right?

Court: That's right. This is something that the Court is not authorized to comment on.

Trial Transcript at 1077–78. (Emphasis added).

The jury then retired to the jury room and shortly thereafter returned with their recommendation of the death penalty. The trial judge imposed the sentence of death as required by law. Ga.Code Ann. § 26–3102 (recodified as Off.Code Ga.Ann. § 17–10–31 (1982)).

In reviewing the denial of Corn's state habeas corpus petition, the Supreme Court of Georgia considered whether the trial judge's reference to the appellate process was so prejudicial as to necessitate granting post-conviction relief. The court affirmed the state habeas court, stating:

Viewing the court's sentencing charge as a whole, we find that the jury was instructed to decide on their sentence from the evidence and law presented at the sentencing hearing, taking the full responsibility of determining life or death for the defendant. No remarks by the court could be construed as encouraging the jury to attach diminished consequences to their verdict.

*Corn v. Hopper,* 244 Ga. 28, 31, 257 S.E.2d 533, 536 (1979). We agree with the Georgia Supreme Court. The court explicitly held that this determination did not conflict with its prior decisions in which the death penalty was set aside when prosecutors, in their arguments, had referred to the mandatory review procedures. In *Prevatte v. State,* 233 Ga. 929, 214 S.E.2d 365, 367 (1975), the death sentence was vacated because the "inevitable effect" of the prosecutor's emphasis on the defendant's right to an automatic appeal was "to encourage the jury to attach diminished consequence to their verdict." Similarly, where the district attorney stressed to the jury that "the State executes only guilty persons after they've been tried and convicted and appealed and everything exhausted," Georgia's highest court did not hesitate to invalidate the death penalty. *Hawes v. State,* 240 Ga. 327, 240 S.E.2d 833, 839 (1977). *See also,*

*Fleming v. State,* 240 Ga. 142, 240 S.E.2d 37 (1977) (death sentence set aside due to prosecutor's improper prediction of the consequences of the jury's verdict). However, in *Coker v. State,* 234 Ga. 555, 216 S.E.2d 782 (1975), a death sentence was affirmed when the trial judge's curative instruction alleviated the harmful effect of the prosecutor's reference to mandatory review in capital cases. In the case at bar, the district court observed that because "of the unique position occupied by the trial judge" the comments of the court at Corn's trial might have been more prejudicial than similar statements made by prosecutors in other instances.

Our problem with this reasoning is not so much the propriety of the state trial judge's statement within the framework of state trial procedure as the implication that it rises to the level of constitutional error. Here, the brief mention of the right to appellate review was not the prejudicial argument of a district attorney, but the court's misinterpretation of a question posed by one of the jurors. It is obvious that the jury was not concerned with the appellate process when it made its initial inquiry of the court. Rather, its sole interest was whether the court could legally disregard its verdict and change the recommended sentence. The trial judge, perhaps understandably, failed to recognize the import of the jury's question and inadvertently mentioned the right of automatic appellate review. Only when a jury member repeated the original question did the judge correctly respond that he could not overturn the jury's recommendation.

■ It is within this narrow factual setting that we address Corn's due process claims. At the outset, we note that the death sentences in *Hawes, Prevatte* and *Fleming* were set aside on direct appeal rather than in habeas corpus proceedings.

Consequently, the Georgia court was not required to consider the constitutional impact of the alleged error but confined itself to state law resolutions. By contrast, in a federal habeas action, Corn's entitlement to relief must be predicated on due process grounds.[3] A reference to the automatic appeal of the death penalty in a different context might have resulted in fundamental unfairness. However, on these facts, viewing the judge's remark in light of the whole sentencing procedure, we conclude that Corn did not suffer any constitutional deprivation.

■ The jurors were obviously uncertain about the mechanics of the sentencing procedure, and the court was attempting to explain the process in which they played such a critical role. The judge did little more than reiterate parts of his earlier charge to the jury to weigh all the evidence and return a verdict on which "it would then be the duty of the Judge to sentence the Defendant ... as provided by law." Trial Transcript at 1616. No rule requires that the jury be kept totally ignorant of the appellate process. There is no indication that mere knowledge of Corn's potential appeal diminished the jury's sense of responsibility for its sentence.

We find little federal precedent that directly bears on this issue. The decision of the United States Court of Appeals for the Second Circuit in *United States v. Greenberg,* 445 F.2d 1158 (2d Cir.1971), a review on direct appeal of a non-capital case, espouses the same reasoning that we find persuasive in the case at bar. In *Greenberg,* the court stated,

It might have been better procedure not to have told the jury that if they convicted upon an erroneous charge they did not 'have to worry' because this court would reverse if there were error. This might have lessened the jury's sense of

3. *See Passman v. Blackburn,* 652 F.2d at 567 where, in discussing the standard for reviewing prosecutorial misconduct in habeas corpus proceedings, the court stated, "Further, not every trial error or infirmity which might on direct appeal call for application of our supervisory powers correspondingly constitutes a denial of

due process necessary to support granting habeas corpus relief. *Donnelly, supra,* 416 U.S., at 642–43, 94 S.Ct., at 1871; *Cobb v. Wainwright,* 609 F.2d 754 (5th Cir.), *cert. den.,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980)."

responsibility but such a reaction would be unlikely.

The contrary view was expressed by the Seventh Circuit Court of Appeals in *United States v. Fiorito,* 300 F.2d 424 (7th Cir.1962) where the court held that it was reversible error for the judge to tell the jury, "[T]hat's why we have a court of appeals, they will reverse me if I'm wrong. This is not the final judgment, there is a court of appeals to review me and a Supreme Court to review them." *Id.* at 426. Unlike this case, *Fiorito* involved the direct appeal of a federal narcotics conviction rather than a collateral attack on a state court judgment. In addition, the judge's statements in *Fiorito* were clearly aimed at lessening the significance of the jury's decision, whereas in the case at bar, the court's remarks dealt with the limited scope of the judge's own power.

Our holding today should not be broadly interpreted to apply to all such comments in other cases but, as stated earlier, is limited to the peculiar facts before us. In this particular instance, the prejudice to Corn, if any, did not reach the magnitude of a due process violation. Thus, this claimed error is no basis for habeas corpus relief.

■ As pointed out earlier, the magistrate in his report and recommendation found that during the guilt determination phase of Corn's trial, the jury instructions on presumption of intent impermissibly and unconstitutionally shifted the burden of proof to the defense. The critical language used by the trial court is "[t]he law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation and justification, mitigation or excuse."[4] Corn also objects to that portion of the charge that "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts" and that "[t]he law presumes every person to be sane unless it is shown to the contrary that he is insane or of unsound mind." Record, vol. 8 at 1534; 1536–37. He claims that this sanity charge, when taken in conjunction with the instruction on intent, could have caused the jury to believe that the defendant had the duty to negate the element of malice. Under Georgia law, malice, either express or implied, is an essential element of murder and must be established by the prosecution beyond a reasonable doubt. Ga.Code Ann. § 26–1101 (recodified as Off.Code Ga. Ann. § 16–5–1 (1982)); *Davis v. State,* 237 Ga. 279, 227 S.E.2d 249 (1976).

■ In examining the instructions for possible constitutional infirmity, we must determine whether a reasonable jury might have failed to understand, from the entire charge, that there was a rebuttable presumption of intent or malice and that they were free to weigh all the evidence. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This court has recently addressed the constitutionality of purported burden-shifting jury instructions. *See Goodwin v. Balkcom,* 684 F.2d 794 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Lamb v. Jernigan,* 683 F.2d 1332 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983); *Hearn v. James,* 677 F.2d 841 (11th Cir.1982); *Mason v. Balkcom,* 669 F.2d 222 (5th Cir. Unit B 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).[5] While the analysis in these opinions is helpful, the cases are not dispositive because each set of instructions differs in length and phraseology, and none is identical to the charge given at Corn's trial.

■ Our inquiry focuses on whether these instructions shifted the burden of proof to the petitioner on the issue of intent to kill, in violation of the due process clause of the fourteenth amendment. *Mason,* 669 F.2d at 225. Under this test, the court does

---

4. The complete quotation of this portion of the charge of the court is reproduced as Appendix "A" at the end of this opinion.

5. *Mason v. Balkcom* is binding on the Eleventh Circuit as a post-September 30, 1981 decision of a Unit B panel of the Former Fifth Circuit. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

not scrutinize discrete portions of the charge but must evaluate it in its entirety:

It is well established that '[i]n determining the effect of [an] instruction on the validity of [a] conviction, . . . a single instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). '[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' *Id.* at 147, 94 S.Ct. at 400. *Accord Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The approach mandated by the above cases requires courts to consider the effect even of patently erroneous instructions in light of the remainder of the charge and the entire trial.

*Lamb,* 683 F.2d at 1339.

 In light of the overall charge of the court, we do not believe that the burden of proof was shifted to Corn to demonstrate a lack of malice. The instructions found to be unconstitutionally burden-shifting in *Sandstrom* contained no curative language to the effect that the presumption of intent could be rebutted.[6] The charge in this case, however, unequivocally stated "but this presumption may be rebutted," and "[a]

person will not be presumed to act with criminal intention." Record, vol. 8 at 1535. Moreover, the instructions were clear that the accused "may" show circumstances to negate intent, "[b]ut he is not required to do so", and that he "may" show that the killing was done without malice, "[b]ut he is not required to do so." Record, vol. 8 at 1533. The charge is replete with cautious explanations that refute Corn's claim that an irrebuttable presumption weighed against him. By way of example the court stated "[i]f such evidence produced against the accused, if there be such, discloses the homicide was done without malice, then this presumption that the homicide is malicious does not exist." The instruction continued, "this presumption . . . does not arise against the slayer unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt the defendant was the intentional slayer." Record, vol. 8 at 1533. In contrast, the charge in *Lamb* contained the damaging phrase, "[t]he law presumes that every homicide is malicious until the contrary appears from circumstances . . . *and it is incumbant* [sic] *upon the accused to make out such circumstances to your satisfaction . . ."* *Lamb,* 683 F.2d at 1337 n. 8 (emphasis added). There was no comparable language in this case to suggest a shift in the burden of proof to Corn. At most, there was a permissible inference[7] that the defendant *could,* if he so chose, introduce mitigating evidence.[8] The United States Supreme Court has recognized that

---

**6.** The Supreme Court specifically noted that the jurors in *Sandstrom* "were not told that the presumption could be rebutted . . . by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all." 442 U.S. at 517, 99 S.Ct. at 2455, 61 L.Ed.2d at 46.

**7.** This conclusion is consistent with the Supreme Court of Georgia's characterization of a similar instruction. That court, at the request of the United States Supreme Court, reconsidered an analogous jury charge and held that such instructions, "taken together, created merely a permissive presumption of the type considered in *County Court of Ulster v. Allen* [442 U.S. 140, 99 S.Ct. 2213], 60 L.Ed.2d 777 (1979)," and not a mandatory and unconstitutional presumption. *Whisenhunt v. State,* 152 Ga.App. 829, 264 S.E.2d 271 (1979) *cert. de-*

nied, 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). *Accord Huffman v. State,* 153 Ga. App. 203, 265 S.E.2d 603 (1980); *Skrine v. State,* 244 Ga. 520, 260 S.E.2d 900 (1979).

**8.** As we stated in *Lamb,* "[t]he Supreme Court has recognized that inferences that operate to shift only a low burden of production—and not the burden of persuasion—to the defendant are constitutionally acceptable if there is a rational connection between the inference and the underlying facts. *See Ulster County Court v. Allen,* 442 U.S. at 157 n. 16, 99 S.Ct. at 2225 n. 16; *Mullaney v. Wilbur,* 421 U.S. [684] at 701– 02 & nn. 28, 30–31, 95 S.Ct. [1881] at 1891 & nn. 28, 30, 31 [44 L.Ed.2d 508]." *Lamb,* 683 F.2d at 1338 n. 9. *See also, Hammontree v. Phelps,* 605 F.2d 1371 (5th Cir.1979).

"[i]nferences and presumptions are a staple of our adversary system of factfinding." *County Court of Ulster v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979). The "ultimate test" in determining whether a presumption in a criminal case is valid under the due process clause of the fourteenth amendment is that "the device must not undermine the factfinder's responsibility at trial, based on the evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Id.* The instructions in this case were fair and balanced in both tone and content. Whatever untoward effect any part of the instruction may have had was entirely vitiated by the clear statement of the state's responsibility to prove intent beyond a reasonable doubt. The Constitution guarantees each defendant a fundamentally fair trial, not a perfect one. The charge as a whole did not impermissibly shift the burden of proof to Corn in violation of his due process rights.

Corn next urges that he was denied effective assistance of counsel in that (1) the trial court refused to provide transcripts and additional funds for his defense and (2) his trial counsel furnished ineffective representation. The magistrate conducted an evidentiary hearing, Record, vol. 10, and found that Corn was not deprived of his sixth amendment right to effective counsel, which finding was adopted by the district court.

 Neither the court's refusal to provide transcripts nor counsel's failure to order a record of the opening and closing remarks at the trial deprived Corn of effective assistance. There is no statutory duty to transcribe those statements. Under Ga. Code Ann. § 27–2401, (recodified as Off. Code Ga.Ann. § 17–8–5 (1982)), the court reporter records the entire trial "except the argument of counsel." Corn contends, however, that the Supreme Court of Georgia could not properly assess the fairness of his death sentence without considering the opening and closing remarks. The court reviewed the record and determined that the death penalty was not imposed under the influence of "passion, prejudice or any other arbitrary factor." *Corn v. State,* 240 Ga. 130, 240 S.E.2d 694 (1977), *cert. denied,* 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 415 (1978); Ga.Code Ann. §§ 27–2537(a)–(c)(1) (recodified as Off.Code Ga.Ann. § 17–10–35(a)–(c)(1) (1982)). The appellant insists though, that there is no greater opportunity for prejudice than in the arguments of counsel, and that the failure to preserve that part of the proceedings was error of a constitutional magnitude. He did not, however, object to any part of the opening or closing statements, nor does he point to any infirmities during those phases of the trial. Absent any showing of harm by a petitioner, it is settled that failure to transcribe counsel's arguments is not a constitutional violation requiring vacation of a death sentence. *Stephens v. Zant,* 631 F.2d 397, 402–04 (5th Cir.1980), *reh. denied and modified,* 648 F.2d 446 (1981), *certified to the Supreme Court of Georgia on other grounds,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982).

 Corn also alleges that because of his indigency he was deprived of the opportunity for a fair hearing in that he could not afford the cost of transcribing the opening and closing remarks. However, as the magistrate correctly observed, there is no indication that the transcription would have been denied, despite Corn's lack of funds, if he had but asked for it. Since Corn did not make such a demand, there is no error in the failure to transcribe. *See Lyle v. State,* 131 Ga.App. 8, 205 S.E.2d 126 (1974); *Ellis v. State,* 137 Ga.App. 834, 224 S.E.2d 799 (1976).

 The other contentions concerning ineffective assistance of counsel are equally without merit. The appropriate inquiry is whether the petitioner was represented by counsel reasonably likely to render and in fact rendered reasonably effective assistance. *United States v. Phillips,* 664 F.2d 971, 1040 (11th Cir.1981), *cert. denied,* ── U.S. ──, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). *Accord, Kemp v. Leggett,* 635 F.2d 453 (5th Cir.1981); *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974); *quoting MacKenna v. Ellis,* 280 F.2d 592,

599 (5th Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1960).[9] Rather than taking isolated instances out of context, we determine whether effective service was rendered based on the totality of the circumstances. *United States v. Gibbs,* 662 F.2d 728 (11th Cir.1981). Corn complains that his attorney failed to pursue certain defenses, file additional motions, and make specific objections. However, such matters of trial strategy are, of necessity, the decisions of the attorney, and the sixth amendment right to reasonably effective counsel does not mean errorless assistance or counsel judged ineffective by hindsight. *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983) (en banc); *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).

■ Corn's counsel cannot be castigated, for example, for failing to pursue a "delusional compulsion" defense instead of a "right/wrong" insanity defense when the defendant insisted that he remembered absolutely nothing about the murder. It would have been difficult, at best, for his lawyer to have shown that Corn was suffering from a certain delusion when the defendant could not even recall the chain of events.

■ Moreover, to warrant the grant of habeas corpus, Corn would have to prove that the assistance, even if ineffective, "created not only a *possibility* of prejudice, but that '[it] worked to his *actual* and substantial disadvantage.'" *Washington v. Strickland,* 693 F.2d at 1258, *quoting United States v. Frady,* 456 U.S. 152, 102 S.Ct.

1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original). As stated in *Adams v. Balkcom,* 688 F.2d 734 (11th Cir.1982), "'prejudice' does not embrace errors which are merely detrimental to appellant's case." *Id.* at 739, *citing Washington v. Watkins,* 655 F.2d 1346, 1360 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

■ In summary, we find that Corn's trial counsel made strategic decisions reasonably calculated to afford effective representation, and Corn has not shown that those choices so prejudiced him as to violate any constitutionally protected right. Therefore, we agree with the district court that Corn's attorney was "capable of rendering and actually did render reasonably effective assistance, based on the totality of the circumstances." *Phillips,* 664 F.2d at 1040; *Nelson v. Estelle,* 642 F.2d 903 (5th Cir.1981).

■ Corn also claims that his sentence was determined in an arbitrary and capricious manner and in violation of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). In *Godfrey,* the United States Supreme Court construed one of the statutory aggravating circumstances, Ga. Code Ann. § 27–2534.1(b)(7),[10] and stated that the death penalty for murder cannot be imposed absent specific findings of torture, depravity of mind, or aggravated battery to the victim. *Id.,* 446 U.S. at 431–32, 100 S.Ct. at 1766–67, 64 L.Ed.2d at 408–09. In Corn's case, the jury was instructed that it must find statutory aggravating circumstances as a prerequisite to imposing a

---

9. As the district court noted, when a general due process claim is raised under the fourteenth amendment, the test for constitutionally ineffective assistance of counsel is whether the whole proceeding was "fundamentally unfair." *Nelson v. Estelle,* 642 F.2d 903, 907–08 (5th Cir.1981); *Hills v. Henderson,* 529 F.2d 397, 401 and n. 8 (5th Cir.), *cert. denied sub nom. Hills v. Maggio,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

10. Ga.Code Ann. § 27–2534.1(b)(7) (recodified as Off.Code Ga.Ann. § 17–10–30(b)(7) (1982)) states in pertinent part:

In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence: ... (7) the offense of murder, rape, armed robbery, or kidnaping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim.

death sentence.[11] The jury did find that there was aggravated battery to the victim, defined as when "[a] person . . . maliciously causes bodily harm to another by depriving him of a member of his body, or by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof." Ga.Code Ann. § 26–1305 (revised and recodified as Off.Code Ga.Ann. § 16–5–24 (1982)). This victim's nose and ear cartilage were severed, her face was cut, and four of the many stab wounds punctured her chest and back muscles, reaching her heart. A doctor testified that she must have died from those wounds in three to fifteen minutes, thus suffering the pain and disfigurement before dying. Corn claims that these facts cannot support a section (b)(7) charge because any one of the stab wounds could have been fatal, and thus the victim was not "in too much pain for very long." Such an argument is clearly spurious. The sordid evidence of the victim's injury and subsequent death more than justifies an instruction on this aggravating circumstance.

■ Corn also alleges that the trial court erred in not clearly instructing the jury during the sentencing phase that even if aggravating circumstances were present, the jury could impose life imprisonment instead of death. A reading of the charge itself refutes this contention. After instructing the jury on statutory aggravating circumstances, the court stated, "[i]f you do not find that at least one of the statutory aggravating circumstances existed, *or if you so find but do not determine to impose the death penalty,* the form of your verdict shall be: We, the jury, fix punishment of the Defendant at life imprisonment as to Count Number Two Murder . . ." Record, vol. 9 at 1616 (emphasis added).[12] This ground of error apparently evolves from recent cases which hold that charges which do not explicitly instruct the jury of its option to recommend against death are unconstitutionally deficient. *Goodwin v. Balkcom,* 684 F.2d 794 (11th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Spivey v. Zant,* 661 F.2d 464 (5th Cir. Unit B 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). *See also, Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion requiring instructions to focus jury's attention on consideration of mitigating circumstances and the alternative of recommending a life sentence even if aggravating circumstances are found). The charge in *Goodwin,* like that in *Spivey,* was insufficient because it did not "even slightly hint about the option to impose life imprisonment even though aggravating circumstances are found." *Goodwin,* 684 F.2d at 802. The instructions here, however, contain adequate guidelines to lead a reasonable juror to fully comprehend the duties and choices involved in the sentencing procedure. We agree with the district court that the sentencing instructions were not constitutionally infirm.

Petitioner next contends that the Georgia statutory provisions and practices governing appellate review of the death sentence violated his sixth and fourteenth amend-

11. Corn's death sentence was based on a finding of three statutory aggravating circumstances, Ga.Code Ann. §§ 27–2534.1(b)(2); 27–2534(b)(4); and 27–2534.1(b)(7) (recodified as Off.Code Ga.Ann. § 17–10–30(b)(2), (4), (7) (1982)). On this appeal, he challenges only the § (b)(7) charge.

12. The charge, when read as a whole, would make it unmistakably clear to the jurors that they have the option to impose a sentence of either death or life imprisonment. Other portions of the court's charge reinforces this conclusion:

You are authorized to consider all of the facts and circumstances, if you find any, in *extenuation and mitigation* of punishment . . . Under the law of this State, every person found guilty of the offense of murder shall be punished by death by electrocution *or by imprisonment for life* in the State Penitentiary.

. . . . .

If you find from the evidence that there were *no statutory aggravating circumstances* which you are authorized to consider, this would end your deliberation on the death penalty and *you should then return your verdict for life imprisonment* . . .

Record, vol. 9 at 1613–15 (emphasis added).

ment rights, and he refers specifically again to the lack of a copy of the opening and closing arguments. As we have stated, the failure to transcribe the statements did not prevent Corn from obtaining a fair review of his trial, nor did it constitute ineffective assistance of counsel. Furthermore, Corn's broadside attack on Georgia's death penalty statute is patently without merit, for the United States Supreme Court has already declared the statute to be constitutional, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In a related argument, Corn claims that the imposition and execution of his death sentence violates the eighth and fourteenth amendments for four reasons: (1.) the death penalty is administered arbitrarily and capriciously; (2.) there is no justification for capital punishment; (3.) the death penalty violates contemporary standards; and (4.) the method of inflicting death is wanton and unnecessarily cruel. As the magistrate and district court correctly stated, these identical issues were decided adversely to the petitioner in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *See also, Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

 Corn also asserts that his sentence is cruel and unusual because administration of the death penalty is often based on a prisoner's race, sex and economic status. In a habeas corpus context, a petitioner bears the burden of producing substantive evidence to support such a claim. *See generally, Smith v. Balkcom,* 660 F.2d 573 (1981), *modified* 671 F.2d 858, 859–60 (5th Cir. Unit B 1982), *stay granted pending application to the Supreme Court,* 677 F.2d 20 (5th Cir. Unit B), *cert. denied,* —— U.S. ——, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). Because Corn has not pointed to any acts evidencing intentional discrimination on the

basis of sex or wealth, we are without a basis to evaluate his complaint. *Id.,* 660 F.2d at 585; *Spinkellink v. Wainwright,* 578 F.2d 582, 614 n. 40 (5th Cir.1978) *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). As was stated in *Spinkellink,* "a state, if it chooses, can punish murderers and seek to protect its citizenry by imposing the death penalty—so long as it does so through a statute with appropriate standards to guide discretion." *Id.,* 578 F.2d at 605. We reiterate that the constitutionality of the Georgia statute was upheld by the United States Supreme Court in *Gregg.* The sentencing guidelines are therefore adequate. Without substantiating evidence, the petitioner's bare allegation of discrimination must fail.

Corn further alleges that the state did not introduce sufficient evidence to rebut his showing that he was legally insane at the time of the murder. Additionally, he argues that the test for insanity, as applied to him, violated the equal protection and due process clauses of the fourteenth amendment. He reasons that even though the evidence of his insanity was sufficient to satisfy the test as codified in Georgia, it would not have supported a finding of sanity under the Model Penal Code test, and thus, it was deficient.

 This argument amounts to little more than Corn's mere speculation that he might not have been convicted in some other jurisdiction where the insanity test differs from that in Georgia. Each state has a substantial interest in formulating and enforcing its own laws, and the fact that Georgia has not adopted the Model Penal Code is no cause to overturn Corn's conviction.

 The Georgia code provides two tests for insanity in criminal cases, the *M'Naghten* test [13] and the delusional com-

---

13. Ga.Code Ann. § 26–702 (revised and recodified as Off.Code Ga.Ann. § 16–3–2 (1982)) provides:

A person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish be-

tween right and wrong in relation to such act, omission, or negligence.
This section codifies the rule expressed in *M'Naghten's Case,* 8 Eng.Rep. 718 (1843). The Supreme Court of Georgia specifically declined to abandon the *M'Naghten* Rule in *Moody v. State,* 244 Ga. 247, 260 S.E.2d 11 (1979), stating

pulsion defense.[14] Corn's attorney relied solely on the right/wrong, or *M'Naghten,* defense. He made that strategy decision because Corn was unable to describe any delusion that afflicted him at the time of the murder. Indeed, Corn said he recalled nothing at all about the death of Mary Long. Thus, because no evidence was offered to satisfy the delusional compulsion test, the court properly addressed only the *M'Naghten* Rule. It was not constitutional error to rely on this particular insanity defense under Georgia law.

Having determined that the court applied the correct test, we turn next to Corn's challenge of the sufficiency of the state's evidence of his sanity. Both Corn's wife and mother-in-law testified that he knew right from wrong. Dr. William P. Sapp, who was a defense witness, stated that Corn suffered from seizures and dysfunction of the brain, (Record, vol. 8 at 1408), but Dr. Miguel Bosch, a witness for the state, testified that he did not detect any autism or signs of psychosis. (Record, vol. 8 at 1453–58). Bosch also concluded that it was difficult, if not impossible, for anyone to determine whether Corn had been sane at the time of the murder because he was not questioned until several days later. It was the jury's task to weigh and determine the relative merits of the testimony and to judge the witnesses' credibility. The jury found the testimony of Mrs. Corn and Dr. Bosch to be more credible. *See United States v. Poolaw,* 588 F.2d 103 (5th Cir.), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979). There is sufficient evidence to sustain the jury's verdict that the state proved beyond a reasonable doubt that Charles Corn was sane at the time of the murder and at the trial. *See Hance v. Zant,* 696 F.2d 940, 948–49 (11th Cir.1983).

With respect to the issue of his sanity, Corn also claims that he was denied his constitutional rights when the court refused to grant his motion for an independent psychiatric examination. The history of Corn's psychiatric examination is extensively discussed in the magistrate's report. Record, vol. 2 at 355. After his arrest, Corn's counsel requested that Corn be evaluated at Central State Hospital. Corn was treated there by Dr. Bosch, a psychiatrist, for fifty-six days. He was then granted a continuance of his trial so that he could gather further psychiatric evidence. He was examined by Dr. Sapp, a psychiatrist, and Dr. Butcher, a psychologist. After Corn entered a special plea of insanity, the trial court required a fourth psychological evaluation at state expense. Following a special hearing on his sanity, Corn was found sane. The state has fulfilled any duty that it might have had to provide him with an adequate psychiatric evaluation.

Additionally, Corn raises several issues involving the selection of the jury. Specifically, he claims that his sentence is unconstitutional because the exclusion of jurors opposed to the death penalty denied him the right to be tried by a fair and impartial jury. He also asserts that the failure to disqualify jurors who might have been predisposed in favor of capital punishment violated his due process and equal protection rights. A potential juror can be excused if he or she is irrevocably committed to vote against the death penalty. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). During voir dire, venireman Vicky White was asked: "[R]egardless of what the evidence is and regardless of what the law is, on that point, you don't think you could impose the death penalty?" She replied, "no." When

---

that it was "for the legislature to say whether the *McNaughton* [sic] Rule should be replaced by the A.L.I. test of mental incompetence in the trial of criminal cases." *Id.* 260 S.E.2d at 15. The legislature has not repealed the old rule.

**14.** Ga.Code Ann. § 26–703 (revised and recodified as Off.Code Ga.Ann. § 16–3–3 (1982)) provides:

A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.

further pressed, "Under any circumstances," she answered "no." If her answer had been tentative or equivocal, there would not have been a sufficient basis to exclude her for cause. *Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970). White's responses, however, were firmly and definitely negative. Taken as a whole, her answers support the trial court's finding that she would automatically vote against the death penalty, and thus, it was proper to exclude her under *Witherspoon.*

Corn maintains that the exclusion of jurors who oppose the death penalty denied him the right to a jury selected from a representative cross-section of the community. In *Spinkellink,* 578 F.2d at 597–98, this court addressed questions pertaining to death-scrupled jurors, and held that when veniremen are properly struck under *Witherspoon,* their exclusion does not violate the representative cross-section requirement of the sixth and fourteenth amendments.

■ As a corollary to the above argument, Corn contends that the exclusion of death-scrupled jurors results in a "prosecution-prone" jury. Therefore, he reasons, his conviction violated his sixth and fourteenth amendment rights in that the jury was unrepresentative and biased on the issue of guilt. This court recently rejected a similar argument in *Smith v. Balkcom,* 660 F.2d at 576–78. *Accord, Spinkellink,* 578 F.2d at 594–95. Other courts have also refused to accept the notion that the remaining jurors, after the exclusion of veniremen opposed to capital punishment, are possessed of a prosecutorial bent and are not impartial. *See Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States ex rel. Clark v. Fike,* 538 F.2d 750 (7th Cir.1976) *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977); *United States v. Marshall,* 471 F.2d 1051 (D.C.Cir. 1972); *Douthit v. State,* 239 Ga. 81, 235 S.E.2d 493 (1977). As we said in *Smith v. Balkcom,* 660 F.2d at 578, "[a]ll veniremen are potentially biased. The process of voir dire is designed to cull from the venire persons who demonstrate that they cannot be fair to *either* side of the case." (original

emphasis). The record does not reveal that any jurors in Corn's case were so biased in favor of the death penalty that they would have imposed it without reasonably weighing and considering the evidence. We concur with the district court's conclusion that the veniremen indicated that they were prepared to perform their civic obligations and that they would obey the law. Such an attitude cannot be labeled as a "hanging jury" mentality. *See Spinkellink,* 578 F.2d at 594–95.

Corn contends next that the police fraudulently induced his wife to waive her interspousal privilege and her fourth amendment right to be free from unreasonable search and seizure. Thus, he alleges, the trial court erred in admitting any evidence furnished by her. Corn's wife aided police in a search which yielded a knife and some bloody clothing. She also testified at the trial. Nothing in the record suggests that police coerced her assistance. Her cooperation was apparently voluntary.

■ Corn had no standing to exclude his wife's testimony at the trial because the privilege against spousal testimony is available only to the witness-spouse. Ga.Code Ann. § 38–1604 (recodified as Off.Code Ga. Ann. § 24–9–23 (1982)); *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Corn's wife could neither be compelled to testify nor foreclosed from doing so, and since she voluntarily took the stand, Corn cannot successfully attack the admissibility of this evidence. The trial court is afforded broad discretion in this area and its determination will not be disturbed absent a clear showing of abuse. *United States v. Dothard,* 666 F.2d 498 (11th Cir.1982). There was no such abuse of discretion in this case.

■ A serologist testified at the trial that she analyzed a sample of Corn's blood and matched his blood type and that of the victim with stains found on the murder weapon, a rag and Corn's clothing. Corn argues that his fourth and fourteenth amendment rights were violated because his blood was seized in a warrantless search without his voluntary consent. He failed to

object initially to the admission of the serologist's testimony and would ordinarily be precluded from raising this objection on review. *See* note 2, *infra*. Nonetheless, the state habeas corpus court and the federal district court considered the merits of the alleged error and rejected it. *Corn v. Hopper*, 244 Ga. 28, 257 S.E.2d 533 (1979); District Court's Order, Record, vol. 2 at 424–25, adopting the Magistrate's report and recommendation. Corn suffered no constitutional deprivation as a result of the blood test. The record indicates that the police informed Corn that a sample of his blood was needed as evidence. Corn willingly agreed to go to the hospital for the purpose of taking the blood specimen, and although he balked momentarily at the prospect of being injected with a needle, he voluntarily consented to the procedure.[15]

■ Moreover, as the magistrate concluded, the admission of this evidence, even if erroneous, was clearly harmless because it had no impact on Corn's defense. Having confessed to the killing, his only defense was insanity. The evidence of Corn's guilt was overwhelming, and he did not suffer any harm of constitutional proportion because of the serologist's testimony.

■ The introduction into evidence of an improperly obtained eyewitness identification is another of Corn's claims of constitutional error. At the trial, witness Billy Sweatman identified Corn after having previously recognized him at the police station at a time when Corn was without counsel. The record is not clear that Corn had actually been arrested prior to the identification,[16] and thus, the proceedings were not necessarily at a critical stage when Corn would have a right to counsel. *Estelle v. Smith*, 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359, 373 (1981); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 464, 54 L.Ed.2d 424, 433 (1977). Indeed, in his reply brief to this court, Corn does not claim that the identification was inadmissible because his sixth amendment right to counsel was violated.[17] He simply urges that the lineup was impermissibly suggestive. When an identification is challenged on other than sixth amendment grounds, the appropriate analysis emerges from the "fifth and fourteenth amendments' proscription against procedures which are unnecessarily suggestive and conducive to irreparable mistaken identification." *Passman*, 652 F.2d at 566, *citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ If clear and convincing evidence demonstrates an independent origin for the witness's identification, the testimony is admissible. *United States v. Wade*, 388 U.S. at 241, 87 S.Ct. at 1926, 18 L.Ed.2d at 1149. Quoting *Wade*, the Court in *Moore v. Illinois*, 434 U.S. at 226 n. 2, 98 S.Ct. at 463 n. 2, 54 L.Ed.2d at 432 n. 2 stated:

15. Record, vol. 6 at 630.

16. It appears that the "lineup" identification of Corn occurred close to the moment of arrest, when Sweatman saw Corn walking in the station with a group of four or five men, two or three of whom were policemen. Corn was arrested at the Clayton County police station approximately four hours after his initial detention, roughly the same time that Sweatman was in the station. For police testimony as to the timing of the arrest, *see* Record, Vol. 6 at 997–999; 1009. For Sweatman's testimony, *see* Record Vol. 5 at 560–71.

17. It was the magistrate who stated in his report and recommendation that the initial identification procedure was impermissibly suggestive due to the absence of counsel. Corn's right to counsel had attached, according to the magistrate, because the police had already narrowed the focus of their investigation to Corn. The report cites *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *see also, Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (companion case). *Wade* clearly involved a critical stage, a post-indictment lineup, but that reasoning would not necessarily affect Corn's case. The definition of a critical stage was clarified in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) where the plurality opinion made clear that the right to counsel as announced in *Wade* and *Gilbert* attaches only to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Moore v. Illinois*, 434 U.S. at 226, 98 S.Ct. at 463, 54 L.Ed.2d at 432.

Among the factors to be considered in making this determination are "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. Billy Sweatman's identification of Corn at the trial was independent of the lineup evidence. Shortly before Mary Long's corpse was discovered, Sweatman had been shopping in the convenience store and had observed Corn there for approximately ten minutes. Corn waited on Sweatman, told the youth that someone had robbed the store, and failed to charge Sweatman for his purchase. Doubtless this experience made a sufficient impression on Sweatman for him to recognize Corn just one week later. Furthermore, Corn was independently identified in court by five other witnesses who gave the same general description of him and placed him at the scene of the killing. No objection was made to the identification at the trial.

This circuit has stated that the key factor in assessing the admissibility of identification testimony is the reliability of the identification in light of all the circumstances. *Nettles v. Wainwright,* 677 F.2d 410 (11th Cir.1982). Considering the totality of the evidence in this case, it is clear that there was no likelihood or irreparable misidentification, and the eyewitness identification testimony was properly admitted.

 The petitioner also attacks the introduction of his confession at the trial as unconstitutional because his detention was unreasonable and his incriminating statements were not knowingly and voluntarily made. Approximately four hours elapsed from the moment of Corn's first contact with police officers until his confession. Corn claims that he does not clearly remember waiving his rights, but the testimony of police officers discloses that prior to any

questioning, Corn was advised of his rights, which he voluntarily waived in writing. Record, vol. 7 at 1277–78, 1295–96; vol. 8 at 1492; *see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This case is not one where the defendant's will was worn down over a long period of time, nor was Corn physically abused. There is no evidence that his detention was unreasonable, and there was no violation of his fourth amendment rights. *United States v. White,* 493 F.2d 3 (5th Cir.), *cert. denied* 419 U.S. 901, 95 S.Ct. 186, 42 L.Ed.2d 147 (1974).

 Even though Corn's statements to the police comported with the standards of *Miranda,* the question remains whether Corn's low IQ and history of emotional problems had such an impact on his confession as to render it involuntary. While it is true that statements or confessions made during a time of mental incompetency or insanity are involuntary and hence inadmissible, mere emotionalism and confusion do not necessarily invalidate them. *Sullivan v. Alabama,* 666 F.2d 478 (11th Cir.1982). The record indicates that Corn remained calm and responsive throughout the interrogation, but was a bit shaken while his wife was present. Record, vol. 7 at 1319–20. He did not appear to be confused or incompetent so as to call into question the voluntariness of his confession. Although Corn was of below-average intelligence, he admitted that he was familiar with the criminal process and he understood the policemen's statements to him. His mental capacity was also evaluated at a hearing held pursuant to the rule in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and the court determined that he understood his rights. Record, vol. 7 at 1310; *see United States v. Bush,* 466 F.2d 236 (5th Cir.1972). The voluntariness of a confession is premised on the totality of the circumstances, *Sullivan,* 666 F.2d at 482–83, and based on that standard, we agree that Corn's inculpatory statement was voluntary and properly admissible into evidence.

 Although he did not object at the trial, Corn later challenged the admission into evidence of the testimony of the

victim's mother and the identification of the victim's son at the sentencing hearing. He claims that such evidence was not probative of circumstances in extenuation, mitigation, or aggravation of the crime, but only served to inflame the jury. The trial court has broad discretion in passing on the admissibility of evidence, including testimony that may be calculated to create prejudice against or sympathy for the accused. It is for the trial court to determine whether the probtive value of the evidence is outweighed by possible prejudicial impact. In evaluating this charge of error, the state habeas corpus court found, and we agree, that the evidence was neither inflammatory nor prejudicial. The mother testified briefly and unemotionally as to her deceased daughter's age, employment and marital status. She also identified the child, who was a spectator in the courtroom. *United States v. Sonntag,* 684 F.2d 781 (11th Cir. 1982). The trial court did not abuse its discretion by admitting this evidence.

██ Corn also contends that the district court erred by not granting a new evidentiary hearing. The petitioner has already had a full and fair federal evidentiary hearing on all the claims in his habeas corpus petition that bear on ineffective assistance of counsel. There are no questions of fact pertaining to any of his other allegations that would require further development. Consequently, we see no reason for an additional evidentiary hearing.

For the foregoing reasons, we AFFIRM in part and REVERSE in part and REMAND to the district court with direction to vacate the stay of execution.

## APPENDIX

The complete instructions on intent given at Corn's trial are set forth below.

Now as I have stated, the other offense charged against the Defendant in Count Number Two of this bill of indictment is that of murder. And in that connection I charge you that a person commits murder when he unlawfully and with malice aforethought either express or implied causes the death of another human being. Express malice is that deliberate intention, unlawfully, to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all of the circumstances of the killing show an abandoned and malignant heart. Malice is an essential element in murder and it must exist before any homicide can be murder. Malice, in its legal sense, is not necessarily ill will or hatred; it is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing. It is not necessary, however, that this unlawful, deliberate intention should exist for any particular length of time before the killing. If it enters the mind of a slayer the moment before he inflicts the fatal wound, that is sufficient.

*The law presumes every intentional homicide to be malicious until the contrary appears from circumstances* of alleviation and justification, mitigation or excuse. The accused *may* show such circumstances to the Jury unless such circumstances appear from the evidence produced against the accused. *But he is not required to do so.* If such evidence produced against the accused, if there be such, discloses the homicide was done without malice, then this presumption that the homicide is malicious does not exist. If, however, the evidence produced against the accused, if there be such, does not disclose that the killing was done without malice, the accused *may* show that it was done without malice. *But he is not required to do so.*

I charge you, however, that this presumption which arises against the slayer where an intentional homicide is shown *does not arise* against the slayer *unless* it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the Defendant was the intentional slayer. When and if a killing is proved to your satisfaction to be the intentional act of the Defendant himself, the presumption of innocence with which he enters upon the trial is removed from him. But as I charged you

heretofore, the evidence of justification or mitigation may be found in the evidence produced against him. If there be no evidence introduced against him to show justification or mitigation and if the evidence introduced shows the homicide to have been committed as charged in the indictment, the Defendant *may, but is not required to,* show mitigation or excuse.

I further charge you that it is for you, the Jury, to say whether the evidence in this case, the testimony and all of the facts and circumstances, sufficiently identify this Defendant as the slayer beyond a reasonable doubt. It is not necessary that the Defendant prove that another person committed the offense.

I charge you that the acts of a person of sound mind and discretion are presumed to be the product of a person's will, *but this presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.* If such person uses a weapon in a manner in which such weapon is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. *However, this presumption may be rebutted. A person will not be presumed to act with criminal intention,* but the trier of the facts, and that is you, the Jury, in this case, *may find such intention* upon consideration of the words, conduct, demeanor and motive, if any, and all facts and circumstances connected with the act for which the accused is prosecuted.

Now, Ladies and Gentlemen of the Jury, I charge you that if you believe beyond a reasonable doubt that the Defendant did, in the County of Clayton, and State of Georgia, with a *weapon described in the indictment* with malice aforethought either express or implied did unlawfully and intentionally stab, cut and kill the deceased as charged in the indictment and you believe the weapon as used in the manner used was likely to produce death, then you would be authorized to convict the Defendant of the offense of murder. If you have a reasonable doubt as to the Defendant's guilt as to

the defense of murder, it would be your duty to acquit the Defendant of the offense of murder.

Now, as I have stated, the Defendant, Charles Thomas Corn, contends that he is not guilty of the offense as charged in this bill of indictment. He further contends that at the time of the commission of the alleged armed robbery and murder he was a person of unsound mind, that he was insane or mentally incompetent to commit the crime charged in this bill of indictment.

Our law declares that a person shall not be convicted of any crime committed while insane. Now in that connection I charge you that a person shall be considered of sound mind who is neither a lunatic nor afflicted with mental disease and who has arrived at the age of thirteen years. A lunatic person, insane or with mental disease without lucid intervals shall not be found guilty of any crime or misdemeanor with which he may be charged, provided the act so charged as criminal was committed in the condition of such lunacy or insanity. But if a lunatic has lucid intervals of understanding, he shall answer for what he does in those intervals as if he had no deficiency.

I charge you that in order to constitute a crime, a person must have intelligence and capacity enough to have criminal intent and purpose to commit the crime charged. *The law presumes every person to be sane unless it is shown to the contrary that he is insane or of unsound mind.* On the question of sanity and insanity, the general rule in this state is that if a person has reason sufficient to distinguish between right and wrong in relation to the particular act about to be committed, he is criminally responsible. On the other hand, if he should not have reason sufficient to distinguish between right and wrong in relation to the particular act about to be committed, he would be insane in legal contemplation and not criminally responsible for such act.

I charge you that intention is an essential element of any crime and that the burden is on the State to prove such intention beyond a reasonable doubt. While *the burden is not on the Defendant to disprove intention,*

nonetheless, if he introduces some competent evidence of insanity, which might tend to negate evil intention in the Defendant at the time of the commission of the alleged crime, then the burden falls upon the State to prove beyond a reasonable doubt that the Defendant was sane at the time of the alleged crime, and therefore had the requisite criminal intent. *Under Georgia law, every person is presumed to be of sound mind and discretion, but this presumption may be rebutted.* This presumption of sanity may be relied upon by the State and in most cases the State need not bear the burden of introducing evidence as to the sanity of the accused in criminal proceedings. But once the affirmative defense of insanity is raised by the Defendant, once the accused has come forward with some competent evidence of insanity whereby the mental capacity of the accused is placed in issue, then the State in order to prove criminal intent of the accused must present evidence to prove the sanity of the accused beyond a reasonable doubt.

I charge you that the question of whether or not the Defendant has successfully rebutted the presumption of sanity in this case is for you to decide. It is not necessary that the Defendant introduce evidence of his insanity sufficient to convince you beyond a reasonable doubt, but rather it is only necessary for him to introduce some competent evidence of his insanity. And when he has done this, the burden shifts to the State to prove his sanity beyond a reasonable doubt. Under Georgia law, *a person will not be presumed to act with criminal intent* but the triers of the facts, the Jurors, may find such intention or the absence thereof upon consideration of the words, conduct, demeanor, motive, evidence of sanity or insanity and all other circumstances connected with the acts for which the accused is prosecuted.

(Emphasis added.)